

FILED by _____ JA _____ D.C.

Jan 19, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 21-60019-CR-SMITH/VALLE
### CASE NO.: _____

18 U.S.C. § 1349
18 U.S.C. § 371
15 U.S.C. § 77q(a)
15 U.S.C. § 77x
18 U.S.C. § 981(a)(1)(C)

**UNITED STATES OF AMERICA**

**vs.**

**JOHN FRITZBERT WATSON, Jr.,**
      a/k/a "John Bert Watson, Jr.,"
      a/k/a "J. Bert Watson, Jr.,"
      a/k/a "Bert Watson, Jr.,"
**JOHN BERT WATSON,**
      a/k/a "J. Bert Watson, Sr.,"
      a/k/a "Bert Watson, Sr.,"
**JEFFREY ALAN HORN, and**
**OMAR LEON PLUMMER,**
      a/k/a "Alexander Goldstein,"
      a/k/a "Al Goldstein,"

                              **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times material to this Indictment:

### Entities

1.      Sunset Capital Assets, Inc. ("Sunset"), f/k/a Sunset Brands, Inc., was a Nevada corporation, incorporated on or about May 1, 1998, and authorized to transact business in Florida on or about April 5, 2012.

2.      Investment Capital Fund Group LLC ("ICFG") was a purported Delaware limited liability company.

3.      Jabez Capital Holdings, LLC ("Jabez"), f/k/a US Financial Investment Partners, LLC, was a Florida limited liability company, organized on or about May 6, 2009.

4.      Genesis Holdings Group, LLC ("Genesis") was a Florida limited liability company, organized on or about June 28, 2013, with its principal place of business located in Broward County, in the Southern District of Florida.

5.      RT Promotions LLC ("RT Promotions") was a Florida limited liability company, organized on or about May 14, 2015, with its principal place of business located in Broward County, in the Southern District of Florida.

6.      Rising Ventures Capital Group, Inc. ("RVC Group") was a Florida corporation, incorporated on or about July 12, 2010, with its principal place of business located in Broward County, in the Southern District of Florida.

7.      Abundant Financial Enterprises Corp. was a defunct Florida corporation, incorporated on or about August 8, 2005, with its principal place of business located in Broward County, in the Southern District of Florida.  On or about September 15, 2006, the State of Florida administratively dissolved Abundant Financial Enterprises Corp.

### Defendants

8.      Defendant **JOHN FRITZBERT WATSON, Jr., a/k/a "John Bert Watson, Jr.," a/k/a "J. Bert Watson, Jr.," a/k/a "Bert Watson, Jr." ("WATSON Jr.")**, was an individual who resided in St. Johns County, Florida.  **WATSON Jr.** was a director and the Chief Investment Officer of Sunset, and a member and manager of Jabez.

9.      Defendant **JOHN BERT WATSON, a/k/a "J. Bert Watson, Sr.," a/k/a "Bert**

Watson, Sr." ("**WATSON Sr.**"), was an individual who resided in St. Johns County, Florida. **WATSON Sr.** was a director and the Chairman of the Board of Sunset, and a manager of Jabez.

10.     Defendant **JEFFREY ALAN HORN ("HORN")** was an individual who resided in Broward County, in the Southern District of Florida.   **HORN** was a member and the manager of Genesis.

11.     Defendant **OMAR LEON PLUMMER, a/k/a "Alexander Goldstein," a/k/a "Al Goldstein" ("PLUMMER")**, was an individual who resided in Broward County, in the Southern District of Florida.  In 2005, **PLUMMER** incorporated Abundant Financial Enterprises Corp., and he was the corporation's sole director.

12.     On or about August 2, 2010, **PLUMMER** signed a Stipulation for Consent Cease and Desist Order Concerning Lion Global Strategies, LLC and Omar L. Plummer (the "Stipulation"), in Case No. XY 11-CD-01, Before the Securities Commissioner State of Colorado, titled *In the Matter of Green Processing Technologies, Inc., Lion Global Strategies, LLC, Omar L. Plummer and Stephen D. Cummins.*  Pursuant to the Stipulation, on or about August 4, 2010, the Securities Commissioner issued an Order (the "Colorado Order"), which immediately and permanently enjoined **PLUMMER** and Lion Global Strategies, LLC ("LGS") to cease and desist from:

(a)     Offering to sell or selling, any security in or from the State of Colorado unless LGS and **PLUMMER** are in compliance with the registration, licensing, and anti-fraud provisions of the Colorado Securities Act, §§11-51-301, 401, and 501, C.R.S., *et seq.*, or

(b)     Otherwise engaging in conduct in violation of the Colorado Securities Act, §§11-51-101, *et seq.*, C.R.S.

13.     On or about December 19, 2012, the Arkansas Securities Commissioner issued a

Cease and Desist Order in Case No. S-11-0310, Before the Arkansas Securities Commissioner, titled *In the Matter of United States Oil & Gas Corp., Omar Leon Plummer (CRD# 2967570), & Alexander William Tawse* (the "Arkansas Order"). In his Order, the Arkansas Securities Commissioner found that in 2011, **PLUMMER**, United States Oil & Gas Corp. ("USO&G"), and Tawse committed various violations of the Arkansas Securities Act, Ark. Code Ann. §§ 23-42-101, *et seq.*, including the unlawful offer and sale of unregistered securities (USO&G notes) to residents of Arkansas, and securities fraud. Among other things, the Commissioner found that **PLUMMER** made a cold-call to a 91- year old investor, and solicited that investor to purchase an unregistered security issued by USO&G, and that **PLUMMER**, USO&G, and Tawse engaged in securities fraud, when they failed to disclose to investors that the Colorado Securities Commissioner had entered the Colorado Order against **PLUMMER**. The Arkansas Securities Commissioner ordered that **PLUMMER**, USO&G, and Tawse immediately cease and desist from the offer or sale of securities in Arkansas and all other activity in violation of the Arkansas Securities Act.

### Entity Bank Accounts

14.    **WATSON Jr.** opened and utilized a TD Bank account ending in 8743, in the name of ICFG ("account no. 8743"). **WATSON Jr.** was the sole signatory for account no. 8743.

15.    **WATSON Jr.** and **WATSON Sr.** opened and utilized a TD Bank account ending in 2450, in the name of Sunset ("account no. 2450"). **WATSON Jr.** and **WATSON Sr.** were the sole signatories for account no. 2450.

16.    **WATSON Jr.** and **WATSON Sr.** utilized a TD Bank account ending in 7749, which they had opened in the name of Jabez ("account no. 7749"). **WATSON Jr.** and **WATSON Sr.** were the sole signatories for account no. 7749.

17.     **HORN** utilized a TD Bank account ending in 2644 ("account no. 2644"), which he had opened in the name of Genesis.  **HORN** was the sole signatory for account no. 2644.

## COUNT 1
### Conspiracy to Commit Mail Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is hereby re-alleged and fully incorporated herein by reference.

2.     From in or around October 2014, and continuing through in or around April 2016, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN FRITZBERT WATSON, Jr.,**
**a/k/a "John Bert Watson, Jr.,"**
**a/k/a "J. Bert Watson, Jr.,"**
**a/k/a "Bert Watson, Jr.,"**
**JOHN BERT WATSON,**
**a/k/a "J. Bert Watson, Sr.,"**
**a/k/a "Bert Watson, Sr.,"**
**JEFFREY ALAN HORN, and**
**OMAR LEON PLUMMER,**
**a/k/a "Alexander Goldstein,"**
**a/k/a "Al Goldstein,"**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and other persons known and unknown to the Grand Jury to:

(a)     knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, knowingly cause to be delivered certain mail matter by U.S. mail and any commercial interstate carrier, according to the directions thereon, in violation of Title 18, United

States Code, Section 1341; and

(b)      knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice to defraud, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by making materially false and fraudulent pretenses, representations, and promises, and concealing and omitting material facts regarding, among other things, the use of the investors' funds, Sunset's assets and lines of business, and the identity and disciplinary history of **OMAR LEON PLUMMER**, and by misappropriating Sunset offering proceeds obtained from investors for their personal use and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      The defendants and their co-conspirators offered for sale, and sold, shares of Sunset common stock to investors in the United States and Canada (the "offering").

5.      **WATSON Jr.**, **WATSON Sr.**, and their co-conspirators, prepared, and caused to be prepared, Private Placement Memoranda ("PPMs"), and investor information brochures, to be provided to prospective investors during the offering.

6

6.      **WATSON Jr.** and **WATSON Sr.** enlisted brokers and sales agents in the Southern District of Florida, including **HORN** and **PLUMMER**, to offer for sale and sell shares in the offering, by telephone and email.  **HORN** served as a broker and sales agent, and **PLUMMER** served as a sales agent.  **HORN**, **PLUMMER**, and other brokers and sales agents earned sales commissions, based on their successful solicitation of investors in the offering, which were not disclosed to investors.

7.      **PLUMMER**, **HORN**, **WATSON Jr.**, **WATSON Sr.**, and their co-conspirators, solicited prospective investors by telephone, electronic mail ("email"), and in person.

8.      **PLUMMER**, **HORN**, **WATSON Jr.**, **WATSON Sr.**, and their co-conspirators made materially false and fraudulent statements to prospective investors regarding Sunset's use of the offering proceeds, Sunset's assets, and its lines of business.  Further, they provided prospective investors with the PPMs, and investor information brochures, which contained the same false and fraudulent statements.  The defendants' false and fraudulent statements included the following:

   a.   Investor funds would be used exclusively for Sunset's business operations;

   b.   On December 31, 2013, Sunset's total assets were $573,322,458.72 (more than one half billion dollars), which the defendants represented to be the difference between approximately $2.3 billion of securities and investments, and a securities valuation allowance of approximately $1.7 billion;

   c.   Sunset's assets included over 15,000 carats of various precious gemstones in a secured vault, which had been independently appraised as having a combined replacement value of $1.2 billion, and a combined fair market value of $812 million; and

   d.   Sunset was currently engaged in banking, mortgage lending, insurance, automobile

finance, management and capital consultative services, REIT's, distressed real estate holdings, SBA lending and other financial service related companies primarily in the Southeast Region of the USA and the Caribbean.

9.      In addition to making the above false and fraudulent statements, the defendants and their co-conspirators failed to disclose, and concealed, the following material facts from prospective investors:

      a.  **WATSON Jr.** and **WATSON Sr.** would divert and misappropriate, and had diverted and misappropriated, offering proceeds;

      b.  brokers and sales agents were and would be paid substantial commissions;

      c.  **WATSON Jr.** prepared and assisted in preparing the supposedly independent appraisals of the alleged gemstones; and

      d.  Sunset was not actively engaged in various lines of business referenced in the PPMs.

10.     When **PLUMMER** solicited prospective investors, he failed to disclose his prior State securities disciplinary history, including the Colorado Order and the Arkansas Order. Moreover, **PLUMMER** concealed his name and used the alias "Alexander `Al` Goldstein" to prevent investors from discovering his State securities disciplinary history.

### Diversion and Misappropriation of Investor Funds

11.     **WATSON Jr.** and **WATSON Sr.** diverted approximately $1.5 million of investor funds to TD Bank account no. 8743, in the name of ICFG, and TD Bank account no. 2450, in the name of Sunset.  **WATSON Jr.** and **WATSON Sr.** transferred approximately $1.4 million of these funds to Jabez's TD Bank account no. 7749.

12.     **WATSON Jr.** and **WATSON Sr.** distributed approximately $1.2 million of

investor funds they diverted to Jabez's TD Bank account no. 7749, to themselves, and to entities controlled by **HORN**, and other co-conspirators, including Genesis Holdings Group, LLC, RT Promotions LLC, and Rising Ventures Capital Group, Inc.

13.     **HORN** used investor funds that **WATSON Jr.** and **WATSON Sr.** diverted to Genesis's TD Bank account no. 2644, to pay undisclosed commissions to **PLUMMER** and other sales agents, for their solicitation of investors in the Sunset offering.

14.     To execute the scheme and artifice, **WATSON Jr., WATSON Sr., HORN, PLUMMER**, and their co-conspirators: (i) caused investors to send funds by interstate wire and by U.S. mail to purchase offering shares; (ii) used interstate wires to instruct Sunset's transfer agent as to the issuance of shares; and (iii) caused Sunset's transfer agent to deliver share certificates to investors by commercial interstate carriers.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2**
**Conspiracy to Commit an Offense against the United States**
**(18 U.S.C. § 371)**

1.     The General Allegations section of this Indictment is hereby re-alleged and fully incorporated herein by reference.

2.     From in or around October 2014, and continuing through in or around April 2016, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN FRITZBERT WATSON, Jr.,**
a/k/a "**John Bert Watson, Jr.,**"
a/k/a "**J. Bert Watson, Jr.,**"
a/k/a "**Bert Watson, Jr.,**"
**JOHN BERT WATSON,**
a/k/a "**J. Bert Watson, Sr.,**"
a/k/a "**Bert Watson, Sr.,**"
**JEFFREY ALAN HORN, and**
**OMAR LEON PLUMMER,**
a/k/a "**Alexander Goldstein,**"

a/k/a "Al Goldstein,"

did knowingly and willfully conspire, combine, confederate, and agree with each other, and with other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, to willfully and knowingly, in the offer and sale of securities, that is, common stock issued by Sunset, by the use of means and instruments of transportation and communication in interstate commerce, and by the use of the mails, directly and indirectly: (a) employ a device, scheme, and artifice to defraud; (b) obtain money and property by means of untrue statements of material fact and omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon the purchaser of those securities, in violation of Title 15, United States Code, Sections 77q(a) and 77x.

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by making materially false and fraudulent pretenses, representations, and promises, and concealing and omitting material facts regarding, among other things, the use of the investors' funds, Sunset's assets and lines of business, and the identity and disciplinary history of **OMAR LEON PLUMMER,** and by misappropriating Sunset offering proceeds obtained from investors for their personal use and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

4.     The Manner and Means section of Count 1 of this Indictment is hereby re-alleged and fully incorporated herein by reference.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy, at least one of the conspirators committed and caused to be committed at least one of the following overt acts, among others, in the Southern District of Florida, and elsewhere:

1.      On or about November 20, 2014, **PLUMMER** placed a telephone call from the number (954) 868-9202, to a number with the area code (206), used by Sunset investor S.J., a resident of Washington.

2.      On or about November 20, 2014, **HORN** sent an email to S.J., a resident of Washington, which included a link to a Sunset Capital Assets presentation on YouTube.

3.      On or about December 11, 2014, **HORN** wrote Genesis's check no. 1022, in the amount of $787.50, payable to **PLUMMER**, for **PLUMMER's** solicitation of S.J.

4.      On or about December 16, 2014, **PLUMMER** placed a telephone call from the number (954) 868-9202, to a number with area code (949), used by investor S.W., a resident of California.

5.      On or about December 17, 2014, **HORN** sent an email to investor S.W., a resident of California.

6.      On or about December 19, 2014, **HORN** wrote Genesis's check no. 1028, in the amount of $600, payable to **PLUMMER**, for his solicitation of S.W.

7.      On or about January 14, 2015, **PLUMMER** placed a telephone call from (954) 868-9202, to a number with area code (732), used by Sunset investor D.C., a resident of New Jersey.

8.      On or about January 16, 2015, **HORN** sent an email to investor D.C., a resident of New Jersey, which instructed D.C. to wire-transfer his payment for Sunset common stock to

ICFG's TD Bank account no. 8743.

9.    On or about January 16, 2015, **WATSON Jr.** sent an email to investor D.C., a resident of New Jersey, which included Sunset's PPM for 3 million common shares at $1.05 per share, and D.C.'s subscription agreement, signed by **WATSON Sr.**

10.    On or about January 19, 2015, **HORN** wrote Genesis's check no. 1044, in the amount of $787.50, payable to **PLUMMER**, for his solicitation of D.C.

11.    On or about January 28, 2015, **HORN** sent an email to investor S.W., a resident of California, instructing S.W. to wire-transfer his payment for additional Sunset common stock to ICFG's TD Bank account no. 8743.

12.    On or about January 30, 2015, **HORN** sent an email to investor S.W., a resident of California, which included a copy of S.W.'s certificate for 9,524 shares of Sunset stock.

13.    On or about April 6, 2016, **WATSON Jr.** sent an email to Sunset's transfer agent in North Carolina, instructing the transfer agent to issue shares of Sunset common stock to certain investors in the Sunset offering, and to deliver the certificates to Sunset's office in Florida.

All in violation of Title 18, United States Code, Section 371.

## COUNT 3-7
### Securities Fraud
### (15 U.S.C. §§ 77q(a) and 77x, and 18 U.S.C. § 2)

1.    The General Allegations section of this Indictment is hereby re-alleged and fully incorporated herein by reference.

2.    In or around the dates set forth in each count below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN FRITZBERT WATSON, Jr.,**
**a/k/a "John Bert Watson, Jr.,"**
**a/k/a "J. Bert Watson, Jr.,"**
**a/k/a "Bert Watson, Jr.,"**

12

**JOHN BERT WATSON,**
a/k/a "J. Bert Watson, Sr.,"
a/k/a "Bert Watson, Sr.,"
**JEFFREY ALAN HORN, and**
**OMAR LEON PLUMMER,**
a/k/a "Alexander Goldstein,"
a/k/a "Al Goldstein,"

did willfully and knowingly, in the offer and sale of securities, that is, common stock issued by Sunset, by the use of means and instruments of transportation and communication in interstate commerce, and by the use of the mails, directly and indirectly: (a) employ a device, scheme, and artifice to defraud; (b) obtain money and property by means of untrue statements of material fact and omissions of material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon the purchaser of those securities, as listed below in each count:

## PURPOSE OF THE SECURITIES FRAUD SCHEME

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by making materially false and fraudulent pretenses, representations, and promises, and concealing and omitting material facts regarding, among other things, the use of the investors' funds, Sunset's assets and lines of business, and the identity and disciplinary history of **OMAR LEON PLUMMER**, and by misappropriating Sunset offering proceeds obtained from investors for their personal use and benefit.

## SCHEME AND ARTIFICE

4.      The Manner and Means section of Count 1 of this Indictment, and the Overt Acts section of Count 2 of this Indictment, are hereby re-alleged and fully incorporated herein by reference.

13

## EXECUTION OF THE SECURITIES FRAUD SCHEME

5.       On or about the dates specified below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants **WATSON Jr.**, **WATSON Sr.**, **HORN**, and **PLUMMER** did execute, and cause the execution of, the aforesaid securities fraud scheme, as more particularly described below:

| COUNT | APPROX. DATE(S) | SECURITIES TRANSACTION |
|-------|-----------------|------------------------|
| 3 | 11/20/2014 – 1/29/2015 | Sale of approximately 5,000 shares of Sunset common stock to investor S.J., for $5,250, with funds wire-transferred to ICFG's TD Bank account no. 8743. |
| 4 | 1/14/2015 – 1/29/2015 | Sale of approximately 10,000 shares of Sunset common stock, to investor D.C., for approximately $10,500, with funds wire-transferred to ICFG's TD Bank account no. 8743. |
| 5 | 12/16/2014 – 1/30/2015 | Sale of approximately 9,524 shares of Sunset common stock, to investor S.W., for $10,000, with funds wire-transferred to ICFG's TD Bank account no. 8743. |
| 6 | 12/16/2014 – 2/20/2015 | Sale of approximately 11,111 shares of Sunset common stock, to investor S.W, for $10,420, with funds wire-transferred to ICFG's TD Bank account no. 8743. |
| 7 | 4/9/2015 – 5/14/2015 | Sale of approximately 20,000 shares of Sunset common stock, to investor E.P., for $25,000, with funds sent by mail to Sunset. |

In violation of Title 15, United States Code, Sections 77q(a) and 77x, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C))

1.       The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for alleging criminal forfeiture to the United States of America of certain property in which the defendants, have an interest.

2.       Upon conviction of a violation of a conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, as alleged in Count 1 of this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18,

United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

DWAYNE EDWARD WILLIAMS
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

John Fritzbert Watson, Jr., et al.

_____Defendants._____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY**＊

**Superseding Case Information:**

**Court Division**: (Select One)

| | | |
|---|---|---|
| ___ | Miami | ___ Key West |
| ✓ | FTL | ___ WPB ___ FTP |

New defendant(s)          Yes _____   No _____
Number of new defendants          _____
Total number of counts          _____

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:     (Yes or No)     No
     List language and/or dialect     _____

4.   This case will take   5   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                                    (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | ✓ | Petty | | |
| II | 6 to 10 days | | Minor | | |
| III | 11 to 20 days | | Misdem. | | |
| IV | 21 to 60 days | | Felony | ✓ | |
| V | 61 days and over | | | | |

6.   Has this case previously been filed in this District Court?          (Yes or No)     No
     If yes: Judge _____     Case No. _____
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?     (Yes or No)     No
     If yes: Magistrate Case No. _____
     Related miscellaneous numbers: _____
     Defendant(s) in federal custody as of _____
     Defendant(s) in state custody as of _____
     Rule 20 from the District of _____

     Is this a potential death penalty case? (Yes or No)     No

7.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?          Yes _____   No ✓

8.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?          Yes _____   No ✓

9.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?          Yes _____   No ✓

_____
DWAYNE E. WILLIAMS
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0125199

*Penalty Sheet(s) attached

REV 6/5/2020

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  **John Fritzbert Watson, Jr.**

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

**Case No**: _____

Count #: 2

Conspiracy to Commit an Offense against the United States

Title 18, United States Code, Section 371

**\* Max. Penalty**:          Five (5) years' imprisonment

**Case No**: _____

Counts #: 3-7

Securities Fraud

Title 15, United States Code, Sections 77q(a) and 77x, Title 18, United States Code, Section 2

**\* Max. Penalty**:          Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:  John Bert Watson**

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

**Case No**: _____

Count #: 2

Conspiracy to Commit an Offense against the United States

Title 18, United States Code, Section 371

**\* Max. Penalty**:          Five (5) years' imprisonment

**Case No**: _____

Counts #: 3-7

Securities Fraud

Title 15, United States Code, Sections 77q(a) and 77x, Title 18, United States Code, Section 2

**\* Max. Penalty**:          Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:  Jeffrey Alan Horn**

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

**Case No**: _____

Count #: 2

Conspiracy to Commit an Offense against the United States

Title 18, United States Code, Section 371

**\* Max. Penalty**:          Five (5) years' imprisonment

**Case No**: _____

Counts #: 3-7

Securities Fraud

Title 15, United States Code, Sections 77q(a) and 77x, Title 18, United States Code, Section 2

**\* Max. Penalty**:          Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  **Omar Leon Plummer**

**Case No**:

Count #: 1

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

**Case No**:

Count #: 2

Conspiracy to Commit an Offense against the United States

Title 18, United States Code, Section 371

**\* Max. Penalty**:          Five (5) years' imprisonment

**Case No**:

Counts #: 3-7

Securities Fraud

Title 15, United States Code, Sections 77q(a) and 77x, Title 18, United States Code, Section 2

**\* Max. Penalty**:          Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**