**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CR-60019-GRAHAM**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**JOHN FRITZBERT WATSON, JR.,**

**Defendant.**
_______________________________________/

**DEFENDANT'S REPLY TO THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR VIOLATION OF THE SIXTH AMENDMENT**

COMES NOW the Accused, JOHN FRITZBERT WATSON, Jr. ("Bert Watson, Jr."), by and through undersigned counsel, and pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Local Rule 88.10, respectfully files its Reply to the United States' Response in Opposition to the Defendant's Motion to Dismiss Indictment for Violation of the Sixth Amendment (DE 311). In support, Watson states as follows:

**I.** On September 23, 2026, in argument before this Court, the Government acknowledged that in various ways they had not complied with the responsibilities pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972) and *United States v. Agurs*, 427 U.S. 97 (1976).

Despite all parties knowing this Court's clear ruling about adherence to the Federal and Local Rules of Discovery, and production of *Brady* material, they have evidenced a total disregard for the letter and spirit of the above rules and binding precedent.

A. On September 23, 2026, the Government filed its proposed Trial Witness List (318), including the following;

1. Jeffrey Horn.

Mr. Horn was a defendant in the prior trial in this case and after being found guilty of all counts, was sentenced to 100 months. The Government has failed to provide the existence or substance of any payments, promises of leniency, preferential treatment or other inducements made to prospective government witnesses within the scope of *Giglio,* 405 US 150 (1972) and *Napue v. Illinois*, 360 US 264 (1959), also in violation of Local Rule 88.10(c).

B. The Government argued on September 23, 2026, at the hearing on the Motion for Brady/Discovery that he reviewed certain documents that he didn't provide to the defense for, among other reasons, he didn't think they were relevant. The Court directed the Government to review all prior documents within his custody and control especially as it related to the detention of the Accused in September 2021 and the fact that the Government made no further attempts to secure the detention of the Accused. Furthermore, the Government advised the Court (in argument in proceedings and their Response in this case, that they made no further attempt to bring Mr. Watson before this Court after September 2021 and they did nothing further to bring him before this Court despite being told he had no passport or identification in 2025.

C. The Government in their Response cites the U.S. Customs and Border Protection records that, inter alia, improperly and illegally contain his full name and date of

birth[1].

Furthermore, the documents referenced above show travel by Mr. Watson, as follows:

1. There was travel one time on January 20, 2026, but the document incorrectly indicates that the Defendant had a passport.

The documents are legally inadmissible and are late discovery/Brady responses that the Government initially refused to provide.

2. The documents show travel from and to Fort Lauderdale, Florida and Managua, Nicaragua, in October 2017.

3. The documents show travel in 2016 between Miami, Florida and Managua.

4. The documents show travel in 2015 between Miami and Managua on several occasions.

The documents show travel between Fort Lauderdale, (FLL), Managua, Nicaragua, Orlando, Florida. Some of these trips occurred before the trial of Mr. Altomare, which commenced on February 18, 2014.

This travel record does not establish that Mr. Watson fled his country to escape prosecution, in light of his extensive travel in and out of the United States prior to the Indictment.

**II.** The facts recited in Defendant's Motion to Dismiss recite an accurate history of the lack of activity by the Government to return Mr. Watson to the Court rather than delay the case for ten (10) years and causing his defense preparation to be hampered by their failure to do their job.

---

[1] The Defense requests all inappropriate personal information be struck, deleted and/or sealed from public view

The facts stated in the Motion to Dismiss are true and accurate. The Altomare case began sometime in 2011 when they arrested Robert Weidenbaum, (*U.S. v. Weidnbaum*, Case No. 1120131 CR) for his criminal activity in his "pump and dump" stock scam that resulted in his cheating the public out of millions of dollars, from 2006 until his arrest in 2011. Weidenbaum became an informant and cooperated with the Government in the Altomare case that was about fraud on the Accused and Sunset Capital.

The position of the Government that the United States knew of his offenses and ignored them because he was a witness in the Altomare case was not argued in our Motion to Dismiss.

**III.** The facts as simply stated demonstrate that the Government knew where he was and had access to Mr. Watson from 2011 until his return to the United States in 2026. They obviously knew where he was when they investigated Mr. Altomare in 2011, when Mr. Weidenbaum was fishing for information about criminal activity and turned them over in the Altomare Fraud of Mr. Watson in 2012. The FBI obviously knew where Mr. Watson and his father were when the FBI and Weidenbaum met them at Lester's Diner in Fort Lauderdale and later went to the ROBOVAULT to video and audio record them examining Mr. Prasad' gems. They certainly could have found where he was had they visited his extensive family in Jacksonville, Florida. They could have looked for him by reviewing his out of country travel as recorded by a separate arm of the U.S. Government, to wit: U.S. Customs and Border Protection.

They knew where he was and how to contact him when the FBI called his cell telephone number already knowing he was living in Nicaragua in 2021. They knew where he was when on that telephone call, he gave them his address and other personal information during that call in June and July 2020.

The Government's further statements about the facts introduced therein are not responsive to the extensive delay they allowed in bringing Mr. Watson back to the United States.

**IV.** THE INDICTMENT OF BERT WATSON, SR., KNOWING HE WAS DYING OF CANCER IS SHAMEFUL.

**V.** The Prosecution's false narrative continues in their additional exhibits attached to their Response. These documents as well as many others were not provided in discovery or in response to Defendant's Motion for Discovery/Brady material. They now only come to light because the Government needs to explain away their violation of Mr. Watson's rights. Additionally, the attachment to their Response only mentions documents, but significantly they are not included, i.e., Exhibit 6 refers to a package of documents but they are not attached to support their defense of their ineptitude. Neither do they supply reported affidavit from AUSA Dwayne Williams that they filed with Magistrate Sullivan on July 2, 2021, nor the rest of the extradition package they discuss in their Response. Are they claiming some type of "work product" privilege that justifies not supplying documents submitted in a United State Courtroom and scheduled to be part of their responsibility to bring Mr. Watson to justice.

In Exhibit 7, they discuss the Interpol Red Notice Application and supporting materials submitted to Interpol, but they don't produce them. Where are they? Why haven't they been produced?

Did their documents submission state that Bert Watson, Jr. was living at a known address with his family in Nicaragua as requested? Did the FBI or AUSA Williams call 202-616-3900

(the telephone number in their exhibit) and provide that office with any information? Is there an FBI 302 reflecting any such activity?

Did the Government notify Interpol Red Notice request was an urgent matter?

The conduct reflected in Exhibit 7 is no more than an elaborate filing of an arrest warrant and fail for what is required pursuant to cases cited in their Response.

**VI.** The fallacy of the claim by the Government that they acted reasonably and expeditiously when they abandoned their extradition request and decided to seek Mr. Watson's arrest and deportation based on his lack of status in Nicaragua, the Government attempts to rely on a heavily redacted document that is inadmissible hearsay. Furthermore, the statements attributed to SA Ritzler are not reflected in the body of Exhibit 9. No FBI 302 or other documentation supports the representation that Nicaragua paused extraditions and deportations to the United States for approximately four years or that there was an inquiry in July 2023 about the status of Mr. Watson and the response that the Chief of the Nicaraguan Police advised that Mr. Watson was under house arrest. The Government's attempt to use a heavily redacted document, as well as those in a foreign language (Spanish) (Exhibits 9, 10 and 12) without an approved translation highlight their minimal effort to supply this Court with proper admissible evidence that supports their position that the lengthy inexcusable post-Indictment and pre-Indictment delay can be explained away.

From September 20, 2021, to August 30, 2025, what did the Government do to secure the attendance of Mr. Watson's presence before this Court?

**VII.** In examining the factors enunciated in *Barker v Wingo*, 407 U.S. 514 (1970), the

analysis suggested by the Government avoids/fails to address multiple issues raised in Defendant's Motion to Dismiss.

**Factor I Length of Delay**

**Pre-Indictment**. The Indictment alleges criminal conduct between October 2014 through April 2016. The Government goes on to explain, falsely, that they only became aware of the criminal conduct in 2020, resulting in charges filed in January 2021. The period from 2016 to 2020 was not addressed in their response because they didn't do anything during that time. The fifty-six (56) month delay is extreme, is presumptively prejudicial and should weigh heavily against the Government.

**Post-Indictment**. The delay between the return of the Indictment in January 2021, and the filing of an arrest warrant in NCIC on August 17, 2021, caused a second delay of almost (eight) months and should be considered presumptively prejudicial and should weigh heavily against the Government.

**Delay in Nicaraguan Efforts**. The Government has conceded that after the Nicaraguan Authorities released Mr. Watson in September 2021, they did nothing until January 2026. That delay of approximately fifty-four (54) months is presumptively prejudicial and should weigh heavily against the Government.

**Total Delay**: One-hundred Eighteen (118) months – Nine Years and Ten Months.

**Factor II Reason for the Delay**

The Government attempts to blame the Defense for the Pre-Indictment delay because, as they argue in their pleadings, he fled to Nicaragua in 2017 to avoid prosecution. There is no evidence to this point and in fact, the Government knows the Accused and others went to

Nicaragua for business purposes. There is no evidence of his going to Nicaragua to avoid a "non-existent" investigation. The delay, post-indictment to his arrest in Nicaragua, was the fault of the Government as they long knew where he was living prior to the Indictment.

**Factor III**. This Court should consider Mr. Watson's contacting the FBI in August 2025 as an assertion of his desire to return to the United States to deal with the charges and assert his speedy trial rights. His further contact with the Embassy telling them he needed their help can only be construed as a request to ultimately address the charges.

**VIII**. Given that the factors in *Wingo*, *supra,* are heavily weighted against the Government, the delay in investigating and prosecuting the case was occasioned by his father becoming a victim to cancer, and their delay also was occasioned by Mr. Prasad and Mr. Williams becoming gravely ill and passing is the result of their delay in conducting a timely investigation:

John Bert Watson, Sr. had cancer in 2020 and passed away in 2021.

Mr. Prasad was gravely ill in 2020 and passed away in 2021.

Walter Williams passed away in 2020.

WHEREFORE, Defendant requests this Honorable Court dismiss the Indictment in this matter.

Respectfully submitted,

/s/ Christopher A. Grillo
CHRISTOPHER A. GRILLO, ESQ.
LAW FIRM OF CHRISTOPHER A. GRILLO, PA
1 E. Broward Blvd., Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 524-1125
Email: *chrisgrilloatty@aol.com*
Florida Bar No.: 302661

**CERTIFICATE OF SERVICE AND OF COMPLIANCE WITH THE LOCAL RULES**

I hereby certify that a true and correct copy of the foregoing was furnished to all parties with the Clerk of the Court via CM/ECF on this 5th day of October 2026.

By:/s/ Christopher A. Grillo
CHRISTOPHER A. GRILLO, ESQ.